TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

BILL LOCKYER
Attorney General

<table>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>OPINION</td><td>:</td><td>No. 98-1203</td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>of</td><td>:</td><td>March 26, 1999</td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>BILL LOCKYER</td><td>:</td><td></td></tr>
<tr><td>Attorney General</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>GREGORY L. GONOT</td><td>:</td><td></td></tr>
<tr><td>Deputy Attorney General</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
</table>

THE HONORABLE WESLEY CHESBRO, MEMBER OF THE CALIFORNIA STATE SENATE, has requested an opinion on the following question:

Does the documentary transfer tax apply to the transfer of real property from a parent corporation to a wholly-owned subsidiary corporation?

CONCLUSION

The documentary transfer tax does not apply to the transfer of real property from a parent corporation to a wholly-owned subsidiary corporation when the beneficial ownership of the property remains the same.

ANALYSIS

The Documentary Transfer Tax Act (Rev. & Tax. Code, §§ 11901-11934; "Act")[1] authorizes cities and counties to impose a tax upon the documents by which real property interests are conveyed. Section 11911 provides:

"(a) The board of supervisors of any county or city and county, by an ordinance adopted pursuant to this part, may impose, on each deed, instrument, or writing by which any lands, tenements, or other realty sold within the county shall be granted, assigned, transferred, or otherwise conveyed to, or vested in, the purchaser or purchasers, or any other person or persons, by his or their direction, when the consideration or value of the interest or property conveyed (exclusive of the value of any lien or encumbrance remaining thereon at the time of sale) exceeds one hundred dollars ($100) a tax at the rate of fifty-five cents ($0.55) for each five hundred dollars ($500) or fractional part thereof.

"(b) The legislative body of any city which is within a county which has imposed a tax pursuant to subdivision (a) may, by an ordinance adopted pursuant to this part, impose, on each deed, instrument, or writing by which any lands, tenements, or other realty sold within the city shall be granted, assigned, transferred, or otherwise conveyed to, or vested in, the purchaser or purchasers, or any other person or persons, by his or their direction, when the consideration or value of the interest or property conveyed (exclusive of the value of any lien or encumbrance remaining thereon at the time of sale) exceeds one hundred dollars ($100), a tax at the rate of one-half the amount specified in subdivision (a) for each five hundred dollars ($500) or fractional part thereof.

"(c) A credit shall be allowed against the tax imposed by a county ordinance pursuant to subdivision (a) for the amount of any tax due to any city by reason of an ordinance adopted pursuant to subdivision (b). No credit shall be allowed against any county tax for a city tax which is not in conformity with this part."

The question presented for resolution concerns whether the transfer of real property from a parent corporation to a wholly-owned subsidiary corporation would be subject to a documentary transfer tax imposed under the provisions of section 11911. We conclude that

_____

[1] All unidentified section references hereafter are to the Revenue and Taxation Code.

the transfer would not be subject to the tax.

In analyzing the language of section 11911, we apply well recognized principles of statutory construction. "To interpret statutory language, we must 'ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.]" (*California Teachers Assn.* v. *Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 632.) "Our first step [in determining the Legislature's intent] is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning. [Citations.]" (*People* v. *Valladoli* (1996) 13 Cal.4th 590, 597.) "[W]e seek to give meaning to every word and phrase in the statute to accomplish a result consistent with the legislative purpose. . . ." (*Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1159.) Finally, a statute is to be interpreted in context, examining other legislation on the same subject, to determine the Legislature's probable intent. (*Harry Carian Sales* v. *Agricultural Labor Relations Bd.* (1985) 39 Cal.3d 209, 223; *Cossack* v. *City of Los Angeles* (1974) 11 Cal.3d 726, 733.)

The key phrase of section 11911 requiring our interpretation is "realty sold." Does a transfer of real property from a parent corporation to its wholly-owned subsidiary corporation constitute "realty sold" for purposes of section 11911? The statute itself does not define the term; however, it has been judicially construed on two occasions.

In *Thrifty Corp.* v. *County of Los Angeles* (1989) 210 Cal.App.3d 881, 886, the court concluded that the term "realty sold" as used in section 11911 should be construed to mean "change in ownership" as the latter term has been defined by the Legislature for purposes of real property taxation:

> "While the Document Transfer Tax Act does not define 'realty sold' that phrase is sufficiently similar to the phrase 'change in ownership' contained in the same code and governing an analogous subject, to warrant that each phrase be defined to have the same meaning. As we explained in *Dieckmann* v. *Superior Court* (1985) 175 Cal.App.3d 345, 356: 'Where the same term or phrase is used in a similar manner in two related statutes concerning the same subject, the same meaning should be attributed to the term in both statutes unless countervailing indications require otherwise.' "

In *McDonald's Corp.* v. *Board of Supervisors* (1998) 63 Cal.App.4th 612, 615-617, the court followed the *Thrifty Corp.* analysis, relying upon an opinion letter and regulations of the State Board of Equalization which construed "change in ownership" and applying such construction in interpreting section 11911's "realty sold."

Following, then, the judicial construction of the term "realty sold" to mean "change in ownership," we find that a transfer of real property from a parent corporation to

a wholly-owned subsidiary corporation does not constitute a "change in ownership." (§§ 62, subd. (a)(2); 64, subd. (b); Cal. Code Regs., tit. 18, § 462.180; *Title Ins. & Trust Co.* v. *County of Riverside* (1989) 48 Cal.3d 84, 93-95; *Crow Winthrop Operating Partnership* v. *County of Orange* (1992) 10 Cal.App.4th 1848, 1852-1853.) Even though a corporation has a legal status distinct from its officers and shareholders (*Title Ins. & Trust Co.* v. *County of Riverside*, *supra*, 48 Cal.3d at 97; *Merco Constr. Engineers, Inc.* v. *Municipal Court* (1978) 21 Cal.3d 724, 729-730; *Miller* v. *McColgan* (1941) 17 Cal.2d 432, 436), the transfer of real property from a parent corporation to a wholly-owned subsidiary corporation is not considered a transfer of control for purposes of a "change in ownership" and hence cannot be so considered for purposes of the Act as "realty sold." In effect, the Legislature has determined that a legal entity does not "sell" to itself in these circumstances where the transferee is a wholly-owned subsidiary of the transferor and the beneficial ownership of the property remains the same.

Our construction of section 11911 is consistent with federal law upon which the Act was patterned when it was enacted in 1967 (Stats. 1967, ch. 1332, § 1). In *Thrifty Corp.* v. *County of Los Angeles*, *supra*, 210 Cal.App.3d at 884, the court stated:

> ". . . Section 11911 was enacted . . . to replace and was patterned after the Federal Stamp Act on conveyances which expired on that same date. (Former 26 U.S.C. §§ 4361, 4363; see *Taxes Replace Taxes* (1968) 43 L.A. Bar Bull. 121.) Because section 11911 was patterned after the former federal act and employs virtually identical language as that act, we must infer that the Legislature intended to perpetuate the federal administrative interpretations of that federal act. (See *Estate of Morse* (1970) 9 Cal.App.3d 411, 415; 51 Ops.Cal.Atty.Gen. 50, 57 (1968) ['it is reasonable to assume that the Legislature intended that the established federal construction of the language used [in the federal stamp act] be continued.']; 62 Ops.Cal.Atty.Gen. 87, 90 [by reference to former federal regulations the Attorney General by written opinion concluded that the transfer of an easement is taxable under section 11911].)"

In *Columbia Gas of Pennsylvania, Inc.* v. *United States* (3d Cir. 1971) 446 F.2d 320, the court concluded that a transfer of real property from one wholly-owned subsidiary corporation to another wholly-owned subsidiary corporation was not subject to the federal tax upon which section 11911 was patterned. The court found the transfer to be part of a "plan of reorganization or adjustment" "whereby a mere change in identity, form, or place of organization is effected," which was exempt from the federal tax (*id.*, at pp. 322-324), and which is similarly expressly exempt under the Act (§ 11923, subd. (d)). In effect, the federal court concluded that the parent corporation was the beneficial owner of the property both before and after the transfer and thus the tax was inapplicable. (*Id.*, at p. 324.) This is the

same basis upon which we have construed the provisions of section 11911.

Our interpretation of section 11911 is also consistent with a recent pronouncement of legislative intent with respect to the application of the Act to corporate transfers. With specific regard to the transfer of property from a corporation to a limited liability company, the Legislature has recently declared:

"It is the intent of the Legislature that existing business entities, such as partnerships and corporations, be permitted to convert into or transfer real property to, limited liability companies without incurring a documentary transfer tax provided that the direct or indirect proportionate interests in the property remain the same." (Stats. 1996, ch. 57, § 29.)

If any doubt remains in construing the language of section 11911, we would observe the admonition given by the court in *McDonald's Corp.* v. *Board of Supervisors, supra*, 63 Cal.App.4th at 617, when it was considering the scope of section 11911:

". . . ' "[i]t is, of course, well settled that in case of doubt statutes levying taxes are construed most strongly against the government and in favor of the taxpayer." ' (*Larson* v. *Duca* (1989) 213 Cal.App.3d 324, 329, quoting *Dreyer's Grand Ice Cream, Inc.* v. *County of Alameda* (1986) 178 Cal.App.3d 1174, 1182; *E. Gottschalk & Co.* v. *County of Merced, supra*, 196 Cal.App.3d at p. 1382; see *Edison California Stores* v. *McColgan* (1974) 30 Cal.2d 472, 476.)"

We conclude that the documentary transfer tax does not apply to the transfer of real property from a parent corporation to a wholly-owned subsidiary corporation when the beneficial ownership of the property remains the same.

\* \* \* \* \*